IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,          )          No. 32157-6-III
                              )
          Respondent,         )
                              )
     v.                       )          PUBLISHED OPINION
                              )
JOSHUA EMANUEL HOWARD,        )
                              )
          Appellant.          )

LAWRENCE-BERREY, J. — Joshua Howard attempted to shoot his wife in the

presence of their children. A jury found Mr. Howard guilty of one count of attempted

first degree murder, one count of first degree assault, and one count of unlawful

possession of a firearm. Because the same criminal conduct supported the attempted first

degree murder and the first degree assault convictions, the trial court merged the

convictions. Accordingly, the court sentenced Mr. Howard for the attempted first degree

murder conviction, with a firearm enhancement and with a domestic violence aggravating

factor. In a separate order not referenced or attached to the judgment and sentence, the

court dismissed the first degree assault conviction, but stated that the conviction would be

reinstated if the attempted murder conviction was vacated on appeal.

Mr. Howard appeals. He contends that the trial court's order violated double jeopardy protections by recognizing the potential validity of the vacated first degree assault conviction. He also challenges the imposition of a lifetime no contact order with his children. Finding that the trial court order violated double jeopardy and there is an inadequate factual basis for the lifetime no contact order, we remand so that the trial court can vacate the first order and reconsider the lifetime no contact order with Mr. Howard's biological children.

## FACTS

Lorrie Howard and Mr. Howard met in 2006 and were married in 2008. Ms. Howard described the relationship as "off and on." Report of Proceedings (RP) at 46. In June 2012, Ms. Howard and her eight children moved to Tacoma in an attempt to move on from the relationship. Still, Ms. Howard allowed Mr. Howard to come to the house and help with chores and child care. At the time of the incident, the children's ages ranged between 11 years old and 10 months old; Mr. Howard is the biological father of the youngest four children.

On July 5, Mr. Howard was at Ms. Howard's residence. The couple argued, and Ms. Howard asked Mr. Howard to leave. Later that night, when Ms. Howard returned from work, Mr. Howard was still at the home. Ms. Howard was worried about Mr.

Howard's presence in the home and avoided confronting him. She took her children into her room to sleep and told them that if Mr. Howard did not leave, they would leave.

The next morning, Mr. Howard was still in the home. Ms. Howard instructed the children to get dressed and ready to leave. The children followed Ms. Howard's instructions and waited outside on the porch. Meanwhile, Mr. Howard was pacing around the home and was crying. Ms. Howard was scared and felt like Mr. Howard was trying to fight with her. Mr. Howard followed Ms. Howard into the upstairs bedroom and told her that he thought they needed a divorce. As she began to walk back down the stairs, Mr. Howard told Ms. Howard that he loved her but she had to die. Ms. Howard heard the sound of a gun being cocked. She turned around and saw Mr. Howard pointing a gun at her.

Ms. Howard ran down the stairs. About halfway down, she heard a gunshot. She continued to run out of the house, toward her neighbor's house. Her children were on the front porch screaming and crying. Ms. Howard sought to lead Mr. Howard away from the children, who were on the front porch screaming and crying. Ms. Howard saw her neighbor and the neighbor's daughter watching from a window in their home.

Ms. Howard fell to the ground in the yard when she realized that she could not get away. According to Ms. Howard, Mr. Howard walked up to Ms. Howard, held the gun two feet from her face, and pulled the trigger. The gun misfired and did not discharge. Ms. Howard grabbed the gun and managed to get it away from Mr. Howard. Mr. Howard ran away.

Eleven-year-old N.R. testified that she was holding her 10-month-old sister when she saw Mr. Howard pull out a gun in the stairwell. She heard the gun fire before Ms. Howard ran out of the house. However, she did not see the incident in the yard because she ran to a neighbor's house for help.

Twelve-year-old D.R. was outside when he heard a gunshot and saw his mother run out of the house. D.R. and eight-year-old N.D. said Mr. Howard walked toward their mother as she lay on the ground. They saw Mr. Howard point the gun at Ms. Howard's face. D.R. also testified that he saw Mr. Howard's finger moving back and forth, as if he was pulling the trigger.

According to the responding officer's testimony, Ms. Howard and her children were waiting outside the house when he and other officers arrived. Several of the children were still crying and Ms. Howard seemed to be in shock. Ms. Howard gave the

4

gun to the officers. Later, forensic investigators recovered a bullet from the bullet hole at the bottom of the stairs.

The State charged Mr. Howard by amended information with one count of attempted first degree premeditated murder, one count of first degree assault, and one count of unlawful possession of a firearm. The attempted murder and assault charges both included a firearm enhancement and a domestic violence aggravating factor.

A jury found Mr. Howard guilty of one count of attempted first degree murder, one count of first degree assault, and one count of unlawful possession of a firearm. The jury also returned a special verdict to the firearm enhancement and the domestic violence aggravating factor, finding that the crime was one of domestic violence that occurred within the sight or sound of the minor children.

At sentencing, the trial court issued an order entitled "Order Re: Sentencing." Clerk's Papers (CP) at 91. In the order and in its oral ruling, the court recognized that the same factual basis was alleged for both the attempted murder charge and the assault charge. The court found that entering a judgment on both offenses would violate double jeopardy. Thus, the court merged the lesser crime of first degree assault into the greater crime of attempted first degree murder. Accordingly, the court vacated the assault

conviction, but in the order wrote that the lesser charge would be reinstated if the attempted first degree murder charge is vacated on appeal.

The judgment and sentence did not include the first degree assault conviction. Instead, it listed the current offenses as attempted first degree murder and unlawful possession of a firearm. Based on these two convictions, the firearm enhancement, and domestic violence aggravating factor, the court imposed an exceptional sentence totaling 420 months of confinement.

Mr. Howard appeals. He contends that the trial court violated double jeopardy protections by issuing a sentencing order that recognized the validity of his first degree assault conviction, even though the conviction was vacated. Mr. Howard also challenges the imposition of a lifetime no contact order pertaining to his biological children.

## ANALYSIS

*Double Jeopardy.* Issues of double jeopardy are questions of law reviewed de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007). The double jeopardy clause of the United States Constitution and the Washington Constitution prohibit the imposition of multiple punishments for the same criminal conduct. *State v. Turner*, 169 Wn.2d 448, 454, 238 P.3d 461 (2010). In instances where a jury finds a defendant guilty of multiple counts for the same conduct, the trial court does not violate double jeopardy

protections if it enters a judgment and sentence referring to only the greater charge. *Id.* at 462. The court "'should enter a judgment on the greater offense only and sentence the defendant on that charge *without reference to the verdict* on the lesser offense." *Id.* at 463 (quoting *State v. Trujillo*, 112 Wn. App. 390, 411, 49 P.3d 935 (2002)).

However, a trial court violates double jeopardy by conditionally vacating the conviction for the lesser offense with the direction that the conviction remains valid. *Id.* at 464. More specifically, "[d]ouble jeopardy prohibits courts from explicitly holding vacated lesser convictions alive for reinstatement should the more serious conviction for the same criminal conduct fail on appeal—by means of the judgment, orders, or otherwise." *Turner*, 169 Wn.2d at 465. A judgment and sentence must not include any reference to the vacated sentence either on its face or by reference to an appended order. *Id.* at 464.

Here, the trial court merged the offenses of attempted first degree murder and first degree assault. The judgment and sentence imposes punishment for the attempted first degree murder and does not reference the first degree assault either explicitly or by reference to an appended order. *See State v. Fuller*, 169 Wn. App. 797, 835, 282 P.3d 126 (2012), *review denied*, 176 Wn.2d 1006 (2013). The judgment and sentence is valid.

7

Still, the court entered a sentencing order separate from the judgment and sentence. The order explicitly holds the vacated lesser conviction open for reinstatement if the greater offense is overturned on appeal. This order violates double jeopardy and must be vacated. Incidentally, there was no need for the court to issue an order holding the first degree assault conviction open for reinstatement. The rule remains that "a lesser conviction previously vacated on double jeopardy grounds can be reinstated following the appellate reversal of a defendant's more serious conviction based on the same criminal conduct." *Turner*, 169 Wn.2d at 465 n.11.

We conclude that the trial court's separate sentencing order must be vacated and remand for the purpose of doing so. The judgment and sentence remains valid.

*No Contact Order.* The imposition of crime-related prohibitions is fact specific and based upon the sentencing judge's in-person appraisal of the trial and the offender. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010). As such, we review them under the abuse of discretion standard. *Id.* at 374. "A court abuses its discretion if, when imposing a crime-related prohibition, it applies the wrong legal standard." *Id.* at 375.

RCW 9.94A.505(8) permits a court to "impose and enforce crime-related prohibitions" as part of a sentence. A "crime-related prohibition" means "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). A no contact order is a crime-related prohibition. *Rainey*, 168 Wn.2d at 376.

Sentencing conditions that interfere with a fundamental right must be sensitively imposed so that they are "reasonably necessary to accomplish the essential needs of the State and public order." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Parents have a fundamental liberty interest in the care, custody, and control of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A court may impose a condition on a criminal sentence that restricts a fundamental right to parent if the condition is reasonably necessary to prevent harm to a child. *State v. Ancira*, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001). "Prevention of harm to children is a compelling state interest, and the State does have an obligation to intervene and protect a child when a parent's 'actions or decisions seriously conflict with the physical or mental health of the child.'" *Id.* at 653-54 (footnote omitted) (quoting *In re Welfare of Sumey*, 94 Wn.2d 757, 762, 621 P.2d 108 (1980)).

Reviewing courts must analyze the scope and duration of no contact orders in light of the facts in the record. *See Rainey*, 168 Wn.2d at 378-82. Remand is required when a reviewing court is unable to determine whether a specific provision or term is reasonably necessary. *Id.* at 382.

In *Rainey*, the Washington Supreme Court was unable to determine whether the scope of a lifetime no contact order was reasonably necessary to achieve the State's interest in protecting a child from her father. *Id.* at 381-82. The trial court failed to give express justification for the purpose or length of the order. *Id.* at 381. The Supreme Court concluded that the trial court should have addressed Mr. Rainey's argument that a no contact order would be detrimental to his daughter's interest. *Id.* at 382. The court remanded the issue for the sentencing court to address the parameters of the no contact order under the "reasonably necessary" standard. *Id.*

Here, Mr. Howard's judgment and sentence contains a lifetime no contact order prohibiting personal, verbal, telephonic, written, or third party contact with Ms. Howard and the eight children. Mr. Howard challenges the no contact order issued for his four biological children.

The trial court did not give an explanation as to why a lifetime no contact order was necessary to accomplish the State's interest in protecting Mr. Howard's children, other than generally recognizing the impact on the children when Mr. Howard discharged his weapon. Even so, we can discern from the record that a no contact order against Mr. Howard's children is needed to protect their emotional welfare while they remain young. The children witnessed the attempted murder of their mother. This action seriously conflicts with the mental health of the children.

However, much like *Rainey*, we cannot discern from the record the reason for a lifetime no contact order. Mr. Howard did not attempt to harm the children in the assault. Nor did the State indicate that the no contact order was needed to protect the children from physical harm. Instead, the facts suggest that the scope of the order may be more than reasonably necessary to protect the children's long-term welfare. Mr. Howard's biological children are young and may one day wish to have contact with their father when they are old enough to make that decision for themselves. Also, the length of Mr. Howard's sentence will prevent the physical contact Mr. Howard has with his children for many years. Remand is necessary for the trial court to address the parameters of the no contact order and sensitively impose a condition that is reasonably necessary to protect the four biological children.

11

Statement of Additional Grounds for Review (SAG). Mr. Howard raises two issues in his SAG. First, Mr. Howard contends that the trial court erred by not instructing the jury that it needed to agree on the act that supported the verdict. While Mr. Howard's SAG fails to include citations to legal authority or to the record, he is generally arguing that a unanimity instruction was needed.

A defendant has a state constitutional right to a unanimous verdict. *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988). The right to a unanimous jury verdict requires that the jury members unanimously conclude that the defendant committed the criminal act for which he is charged. *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), *overruled on other grounds by Kitchen*, 110 Wn.2d 403. Where the evidence indicates that several distinct criminal acts have been committed and can form the basis of the one count charged, the unanimity rule requires the State to inform the jury of the criminal act for which the charge is based or, alternatively, the court must instruct the jury to agree on the specific criminal act. *Id.* at 572.

The *Petrich* unanimity rule is applicable only in situations where the State presents evidence of "several distinct acts." *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). The rule does not apply where the evidence shows a "continuing course of conduct." *Id.* In determining whether the criminal conduct constitutes one continuing

act, we evaluate the facts in a commonsense manner. *Id.* Evidence that the criminal conduct occurred at different times and places suggests that several distinct acts occurred. *Id.*

Here, there is no need for a *Petrich* unanimity instruction. The evidence shows a continuing course of conduct by Mr. Howard and not several distinct acts. Mr. Howard's two attempts to kill Ms. Howard occurred in an unbroken sequence of events, at the same home, and using the same weapon. Mr. Howard's right to a unanimous jury verdict was not violated.

Second, Mr. Howard contends that the evidence did not support the premeditation element of his conviction for first degree murder. We review a challenge to the sufficiency of the evidence to determine whether any rational trier of fact could have found the disputed element of the offense beyond a reasonable doubt, after viewing the evidence in the light most favorable to the State. *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995).

"The premeditated intent to cause the death of another is an essential element of the crime of attempted first degree murder." *State v. Barajas*, 143 Wn. App. 24, 36, 177 P.3d 106 (2007). Premeditation involves a deliberate formation of and reflection upon the intent to take a human life and includes the mental process of thinking beforehand,

deliberation, reflection, weighing, or reasoning for a period of time, however short. *Id.* (quoting *State v. Hoffman*, 116 Wn.2d 51, 82-83, 804 P.2d 577 (1991)). Factors relevant to establish premeditation include motive, procurement of a weapon, stealth, and method of killing. *Pirtle*, 127 Wn.2d at 644. "Premeditation may be proved by circumstantial evidence if substantial evidence supports the jury's finding and inferences from the facts are reasonable." *Barajas*, 143 Wn. App. at 36. Statements of the defendant may be considered when determining whether the defendant acted with premeditation. *Id.*

We find sufficient evidence to support the element of premeditation. The record shows that Mr. Howard thought about his actions before attempting to kill Ms. Howard. Before confronting Ms. Howard, Mr. Howard paced around the house crying. He told Ms. Howard that she needed to die. He cocked the gun and fired. He followed her outside and pointed the gun in her face. He fired the gun in another attempt to kill her. The jury could find from Mr. Howard's words and actions that he deliberated about killing Ms. Howard before attempting to kill her. The evidence supports the element of premeditation.

Both of Mr. Howard's contentions in his SAG fail.

14

No. 32157-6-III
*State v. Howard*

We affirm the judgment and sentence. Remand is necessary for the trial court to vacate the improper order. Remand also is necessary for the trial court to reconsider the scope of the no contact order under the "reasonably necessary" standard, as between Mr. Howard and his biological children only.

_____
Lawrence, Berrey, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Korsmo, J.

15