IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34512-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FRANCISCO JAVIER MUNOZ | ) | |
| QUINTERO, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Francisco Munoz Quintero appeals from his

conviction for the crime of second degree murder. He argues the trial court erred in

entering a lifetime no-contact order prohibiting him from having any contact with his

daughter. We disagree. The record establishes a clear basis for the order, and the trial

court recognized its authority to modify the order. We therefore affirm.

FACTS

On December 24, 2015, Luisa Garcia left her job at Walmart and picked up her ex-

boyfriend, Munoz Quintero, and their two-year-old daughter A.M. Sometime during the

trip, Munoz Quintero shot Garcia twice. Munoz Quintero pushed Garcia out of the car in

the middle of the street and later threw the murder weapon out the window. The witnesses who found Garcia on the street called emergency personnel, but she died from her injuries. A.M. had been in the back seat the entire time. After the incident, Munoz Quintero told several people that he had shot Garcia.

Munoz Quintero turned himself in to law enforcement on December 25, 2015. Munoz Quintero revealed he was a citizen of Mexico during the questioning. The law enforcement department had a policy, consistent with Article 36(b) of the Vienna Convention, requiring it to inform foreign nationals of their right to contact the appropriate consulate. Despite the interviewing detectives' knowledge of both Munoz Quintero's nationality and the policy, they did not inform him of this right. Munoz Quintero gave a recorded statement to police.

The investigation by law enforcement also uncovered several prior incidents of domestic violence. In one incident, a witness saw Munoz Quintero choking Garcia while she was pregnant with A.M. After the witness's brother intervened, the witness observed Munoz Quintero in his car with a gun pointed at his head. In another incident, Munoz Quintero shoved Garcia against a wall and began choking her while she was holding A.M., then an infant, in her arms. A third incident began when Garcia sought help in the middle of the night because Munoz Quintero was choking her in their car. The witness

went outside and saw Munoz Quintero in the front passenger seat of the car, with A.M. in the backseat. Munoz Quintero had a gun in his hands and cocked it, threatening to kill Garcia and the witness. A fourth incident occurred a few days later. Munoz Quintero snapped Ms. Garcia's cell phone, shoved her to the floor, and assaulted her in front of A.M.

The State charged Munoz Quintero with second degree murder. The State also charged an enhancement and various aggravating factors.

Munoz Quintero filed a motion to suppress his police interview. One of his arguments was that law enforcement had violated the Vienna Convention because it failed to advise him of his right to contact the Mexican consulate. The trial court ruled that although law enforcement admitted they did not timely inform Munoz Quintero of his right to contact the consulate, suppression was not a remedy as a matter of law. The court permitted the State to use the statements at trial, but suppressed the recording itself for a separate violation of RCW 9.73.090(1)(b)(iii). Despite the favorable ruling, the State did not actually introduce Munoz Quintero's statements to law enforcement at trial.

The State moved the court to admit evidence of the prior bad acts of domestic violence and argued it was admissible under ER 404(b). After a hearing, the trial court

issued findings of facts and conclusions of law analyzing and admitting the evidence.

Munoz Quintero does not challenge the admission of this evidence on appeal.

After a lengthy trial, the jury returned a guilty verdict for second degree murder.

The jury also returned special verdicts for the firearm enhancement and each of the

aggravating circumstances the State had charged. The State argued for an exceptional

sentence upward, which the trial court imposed. Munoz Quintero received a sentence of

390 months' confinement with 36 months of community custody.

In addition, the State sought a no-contact order to protect A.M. and restrain Munoz

Quintero from contacting A.M. for life. Munoz Quintero opposed the order. The State

argued the order was necessary because Munoz Quintero needed to treat his domestic

violence problem first or A.M. would be at risk. The State also was concerned that if the

trial court did not impose the no-contact order, it would lose jurisdiction and be unable to

enter an order later, in the event one was necessary. The State claimed the order would

not guarantee Munoz Quintero would be restrained for life because he could modify it in

the future, assuming he made progress in his domestic violence treatment.

The trial court agreed, reasoning as to the duration:

Okay. So I am mindful of that request, and I am going to indicate that
there's more information that this Court would need before I—I am going
to sign this no-contact order today, and it would include [A.M.]. I don't—I
should say that I acknowledge that I just ordered domestic violence

counseling for Mr. Munoz Quintero, and I certainly would be interested in—in addressing a motion in the future relative to [A.M.] provided—certainly, anyone can bring that back before me, but—and to look at what information would show that that would be in her best interest, and so that door is not closed.

And I also understand the record made relative to the other family law proceeding, and I would just indicate that whatever happens in that venue, I'm hopeful that—there's lots of family members here present today that I'm sure love that little girl very, very much, and I think they are probably on both aisles, so that will be something for another judicial officer to address, and I won't make any further remarks in that regard.

Verbatim Report of Proceedings (May 9, 2016 & June 20, 2016) at 84-85.[1] The

trial court entered a domestic violence no-contact order pursuant to chapter 10.99

RCW. That order provides in relevant part:

[Munoz Quintero] is ***RESTRAINED*** from:
. . . .
B. Coming near and from having any contact whatsoever, in person or through others, by phone, mail or any means, directly or indirectly, except for mailing or service of process of court documents by a 3rd party or contact by [his] lawyers with [A.M.].
. . . .
***The term of this No-Contact Order is for <u>LIFE.</u>***

Clerk's Papers at 1352-53. There is nothing in the no-contact order that explicitly

permits it to be modified or that sets any standards for its modification.

Munoz Quintero timely appealed.

---

[1] A separate proceeding may well have terminated or otherwise affected Munoz Quintero's parental rights to A.M. This opinion does not revive or modify any right that

ANALYSIS

NO-CONTACT ORDER

Munoz Quintero contends the no-contact order prohibiting him from contacting A.M. for life is impermissible. He contends the order is unreasonable in both scope and duration. We disagree.

A trial court's decision to impose crime-related prohibitions is reviewed for an abuse of discretion. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). However, this court reviews a condition that interferes with a fundamental constitutional right more carefully. *Id*.

Washington courts may impose "crime-related prohibitions" as conditions of a sentence. RCW 9.94A.505(9). Conditions on a sentence that impose limitations on a fundamental right must be "sensitively imposed" so that they are "reasonably necessary to accomplish the essential needs of the State and public order." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Parents have a fundamental liberty interest in the care, custody, and control of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A court may impose a condition on a criminal sentence that restricts a fundamental right to parent if the condition is reasonably

Munoz Quintero may have lost or had affected by any such proceeding.

necessary to prevent harm to a child.  *State v. Ancira*, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001).  "'Prevention of harm to children is a compelling state interest, and the State does have an obligation to intervene and protect a child when a parent's actions or decisions seriously conflict with the physical or mental health of the child.'"  *State v. Aguilar*, 176 Wn. App. 264, 277, 308 P.3d 778 (2013) (internal quotation marks omitted) (quoting *Ancira*, 107 Wn. App. at 653-54).

"Reviewing courts must analyze the scope and duration of no contact orders in light of the facts in the record."  *State v. Howard*, 182 Wn. App. 91, 101, 328 P.3d 969 (2014).  Remand is required when a reviewing court is unable to determine whether the scope or duration of a term is reasonably necessary.  *See Rainey*, 168 Wn.2d at 382.

Munoz Quintero first claims the scope of the order is unreasonable because no evidence definitively established whether A.M. was sleeping or awake at the time of the shooting.  We disagree.  Her consciousness at the time is not determinative.  The court's exceptional sentence findings explicitly and clearly address the evidence supporting the no-contact order.

The record establishes Munoz Quintero brandished a firearm and shot it multiple times in car where A.M. was at risk in the backseat.  His inability to control his domestic violence during this crime is consistent with the several other instances in the record

7

where he put A.M. at risk of serious harm or death. In addition, A.M. will now grow up knowing her father killed her mother. There is no doubt the scope of the no-contact order is reasonably necessary to protect A.M.'s physical or mental health.

Munoz Quintero also contends the trial court made no record analyzing whether the duration of the no-contact order was reasonable, which requires remand. He relies on four published cases: *Rainey*, 168 Wn.2d 367; *Aguilar*, 176 Wn. App. 264; *Howard*, 182 Wn. App. 91, and *In re Personal Restraint of Torres*, 198 Wn. App. 685, 393 P.3d 894 (2017).

In *Rainey*, the court remanded a lifetime domestic violence no-contact order between the defendant and his child for resentencing because the trial court did not articulate reasoning for the length of the order nor did the State attempt to justify the necessity of a lifetime order. 168 Wn.2d at 381. The remaining cases cite *Rainey* for the proposition that the length of the order must also be reasonably necessary.

In *Howard*, the defendant and his wife had four of eight children together. 182 Wn. App. at 96. One morning, the defendant attempted to kill his wife as she and the children were leaving, and the children witnessed the attempt. *Id.* at 96-97. The trial court entered a lifetime no-contact order between the defendant and the children, including his biological children. *Id.* at 99. After analyzing the issue, this court

8

concluded the scope of the order was reasonably necessary but that the record was unclear, and the trial court did not articulate why a lifetime duration was necessary in that case. *Id*. at 102. This court remanded "for the trial court to address the parameters of the no contact order and sensitively impose a condition that is reasonably necessary to protect the four biological children." *Id*.

In *Aguilar*, the defendant murdered his wife and stabbed his daughter during the commission of the crime, as she tried to protect her mother. 176 Wn. App. at 267. The court entered a 10-year no-contact order between the defendant and his children. *Id*. The reviewing court agreed the duration of the order was appropriate, "the 10-year length of the no contact order allows Mr. [Aguilar] to regain contact with his children when the children are at a more mature age and can address their relationship with their father in light of the events that occurred." *Id*. at 278. Munoz Quintero implies a 10-year no-contact order would therefore be sufficient in his case. This case is distinguishable. Here, A.M. would only be 12 years old when a 10-year no-contact order expired.

In *Torres*, the State charged the defendant with witness tampering after he instructed one son what to tell police about the details of another child's death. 198 Wn. App. at 688. At sentencing, the State asked for a six-month no-contact order between the defendant and his child. *Id*. The trial court instead imposed a five-year no-contact order

without explaining why such an order was reasonably necessary to further the State's interest nor explain why it entered an order 10 times the length requested by the State. *Id.* at 689. This court remanded for resentencing, citing to the lack of reasons from the trial and the record to justify the length. *Id.* at 690.

The cases together suggest the trial court must articulate reasons for imposing a lengthy restriction on a parent's fundamental right to parent, or the reason must be clear in the record.

Here, the trial court articulated reasons for imposing the no-contact order. These reasons are articulated above and are supplemented by the trial court's written factual findings when it imposed an aggravated sentence. The trial court additionally recognized its authority to modify the order and said it would consider a modification once Munoz Quintero could show that he has made satisfactory progress with domestic violence counseling so as to lessen the risk of harm to A.M. The problem is that the order, as signed, does not reflect this important comment.

But RCW 26.50.130(2) permits a person restrained for more than two years to request modification of a domestic violence no-contact order. The process for modification is described in RCW 26.50.130(4), and requires the restrained party to prove by a preponderance of the evidence that the requested modification is warranted. Nothing

more needs to be proved, provided that the requested modification does not reduce the duration of the order or eliminate a provision in the order that enjoins acts of domestic violence. *Id.*

If the requested modification includes either reducing the duration of the order or eliminating a provision that enjoins acts of domestic violence, the court would be required to consider the factors set forth in RCW 26.50.130(3)(c)(i)-(ix). RCW 26.50.130(4). These factors address whether the restrained person is likely to commit acts of domestic violence against the protected person. *See* RCW 26.50.130(3)(b). A no-contact order that exceeds two years can be terminated in accordance with RCW 26.50.130(3)(a) or by first modifying it to a term less than two years. *See* RCW 26.50.130(4).

We conclude that the trial court articulated sufficient reasons to justify the scope and duration of the no-contact order. Important in our decision is that the trial court recognized its authority to modify the no-contact order and that there is a clear process for modifying and even terminating the order.

No. 34512-2-III
*State v. Munoz Quintero*

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Munoz Quintero, a Mexican citizen, complains that law enforcement failed to advise him of his right to contact the Mexican consulate.

At trial, he argued that this failure required suppression of his confession to law enforcement. The trial court ruled, "[s]uppression of statements given voluntarily after a valid waiver of *Miranda*[2] rights is not a remedy for violation of Article 36 of the Vienna Convention." CP at 115. We agree.

This court reviews the trial court's conclusions of law from a suppression hearing de novo. *State v. Campbell*, 166 Wn. App. 464, 469, 272 P.3d 859 (2011). Article 36(1)(b) of the Vienna Convention on Consular Relations requires an arresting government to notify a foreign national who has been arrested or taken into custody of his or her right to contact consular officials. *State v. Martinez-Lazo*, 100 Wn. App. 869, 873-74, 999 P.2d 1275 (2000). However, suppression is not a remedy for a violation. *State v. Jamison*, 105 Wn. App. 572, 583, 20 P.3d 1010 (2001); *see also United States v. Lombera-Camorlinga*, 206 F.3d 882, 888 (9th Cir. 2000) (suppression not warranted). We conclude that the trial court did not err in denying Munoz Quintero's request for suppression under this theory.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

12

No. 34512-2-III
*State v. Munoz Quintero*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____          _____
Korsmo, J.                                          Pennell, J.

13