IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 84086-0-I |
| Respondent, | DIVISION ONE |
| v. | ORDER GRANTING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |
| DARRYL WILLIAM KENNON, | |
| Appellant. | |

Appellant, Darryl William Kennon, filed a motion for reconsideration of the opinion filed on November 6, 2023. Respondent, State of Washington, filed an answer to the motion. The panel has determined that the motion for reconsideration should be granted and the opinion filed on November 6, 2023 withdrawn and a substitute opinion filed to amend section 2(c) of the analysis regarding the Victim Penalty Assessment and to amend the last paragraph to read:

> We affirm Kennon's judgment and sentence and remand to the trial court solely to strike the VPA fee and to consider whether to impose interest on the restitution it previously ordered after consideration of the relevant factors under RCW 10.82.090(2).

Now, therefore, it is hereby

ORDERED that appellant's motion for reconsideration is granted and the opinion filed on November 6, 2023 shall be withdrawn and a substitute opinion amending section

2(c) of the analysis regarding the Victim Penalty Assessment and amending the last paragraph shall be filed.

Díaz, J.

Bruwr, J

Smith, C.J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>      v.<br><br>DARRYL WILLIAM KENNON,<br><br>               Appellant. | No. 84086-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DíAZ, J. — A jury convicted Darryl William Kennon (Kennon) of burglary in the first degree and assault, as well as four counts of felony violation of a no-contact order (NCO), each with domestic violence designations. Following a partially successful first direct appeal, Kennon was resentenced to life without parole under the Persistent Offender Accountability Act (POAA). His sentence included a five-year NCO with his children and a lifetime NCO with his former wife, who was the victim of each crime. Kennon appeals, arguing the NCO with his children violated his constitutional right to parent, and that the POAA is unconstitutional because of its racially disproportionate impact. Kennon also challenges the imposition of the victim penalty assessment (VPA) and the accumulation of interest on restitution. We affirm the judgment and sentence, and remand to the trial court solely to strike Kennon's VPA and consider whether to

impose interest on restitution it had previously ordered.

## I.    BACKGROUND

### A.    Factual Background

This court's prior opinion in this matter laid out the facts of this case, so it is unnecessary to repeat them in their entirety. State v. Kennon, No. 80813-3-I, slip op. (Wash. Ct. App. August 16, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/808133.pdf. By way of summary, Z.K.,[1] formerly married to Kennon, sought a domestic violence protection order protecting her and their three children. Kennon, No. 80813-3-I, slip op. at 2. Kennon violated this first protection order, so the court ordered additional ones, including revoking Kennon's ability to see his children. Id.

On August 14, 2018, after contacting Z.K. in an increasingly aggressive manner, Kennon entered Z.K.'s apartment while the children were present. Id. at 3. He struck her and hit her in the eye with his head. Id. Kennon then chased Z.K. around the house with a hammer and threatened to kill her. Id. at 4. K.K. (one of the children) attempted to stop Kennon multiple times. Id. Z.K. and the children eventually escaped and Kennon drove away. Id.

Z.K. sustained an orbital wall fracture. Id. at 5. K.K. has since been treated for post-traumatic stress disorder and depression.

### B.    Procedural Background

A jury found Kennon guilty of several felonies including, relevantly, a "most serious offense" under RCW 9.94A.030(32)(a), namely the burglary in the first

---

[1] We refer to her and later, the children, by their initials to protect their privacy.

degree, and four counts of felony violation of an NCO. Kennon, No. 80813-3-I, slip op. at 23. At sentencing, the State offered Kennon's two prior convictions for child molestation in the first degree and rape of a child in the first degree, each of which were also most serious offenses. Id. at 23. The State argued the trial court must impose a life sentence without the possibility of release (LWOP) under the POAA (RCW 9.04A.570). Id. at 7.

Kennon argued the POAA was unconstitutional because it requires the imposition of a cruel and unusual punishment (LWOP), which is disproportionately inflicted upon Black men. Id. at 24-25. The trial court declined to impose LWOP under the POAA. Id. at 7. Instead, it imposed an exceptional sentence of 176 months and entered lifetime NCOs protecting Kennon's children and Z.K. Id. at 8.

Kennon appealed. Id. As part of his first appeal, he argued the NCOs' prohibition on contacting his children violated his fundamental right to parent. Id. at 20. The State cross-appealed the trial court's failure to impose a life sentence. Id. at 23.

In August 2021, this court partially agreed with Kennon and remanded the case for resentencing. Id. at 30. We ordered the trial court to reassess the parameters of the NCO to "(1) address whether the no-contact orders 'remain[ ] reasonably necessary in light of the State's interests in protecting' K.K., M.K., and V.K. from harm, (2) if they are, then the court must narrowly tailor the orders, 'both in terms of scope and duration,' and (3) the court should consider less restrictive alternatives when it comes to the orders' scope and duration." Id. at 22-23.

While noting that "there is substantial evidence that the POAA applies to men of color at alarmingly disproportionate rates," this court concluded that it "cannot revisit this issue" on the record before it because "our Supreme Court has concluded that the POAA does not constitute cruel and unusual punishment" and Kennon provided no data or "evidence to support 'a clear showing that the rule is incorrect and harmful.'" Id. at 26-28 (quoting State v. Gregory, 192 Wn.2d 1, 34, 427 P.3d 621 (2018)).

C.    Re-sentencing and Present Appeal

On May 20, 2022, the trial court resentenced Kennon to LWOP.  The court maintained the lifetime NCO for Z.K., but modified the children's NCO to five years. During this time, however, Kennon could call them once per year and write them two letters per year.  The State referred to it as an "appropriate compromise" because if the children "do not wish to have that contact, they will not have it." Kennon timely appeals.

II.    ANALYSIS

A.    No Contact Order

Kennon argues the revised NCOs infringe upon his constitutional right to parent his children because (1) the written NCO did not comport with the trial court's stated intent in the resentencing hearing, and (2) by prohibiting incidental contact with Z.K, the NCO hindered his ability to contact his children.  He made no objections to these provisions at his resentencing.

"[F]or an objection to a community custody condition to be entitled to review for the first time on appeal, (1) it must be manifest constitutional error or a

4

sentencing condition that . . . is 'illegal or erroneous' as a matter of law, and (2) it must be ripe." State v. Peters, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019) (quoting State v. Blazina, 182 Wn.2d 827, 833, 344 P.3d 680 (2015)).[2]

Parents have a fundamental constitutional right "to the care, custody, and companionship of their children." State v. DeLeon, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020) (citing State v. Warren, 165 Wn.2d 17, 34, 195 P.3d 940 (2008)).

"We generally review sentencing conditions for abuse of discretion." In re Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). "But we more carefully review conditions that interfere with a fundamental constitutional right, such as the fundamental right to the care, custody, and companionship of one's children." Id. (citing Warren, 165 Wn.2d at 32). "Such conditions must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" Rainey, 168 Wn.2d at 374 (quoting Warren, 165 Wn.2d at 32). More specifically, courts may limit the fundamental right to parent when "reasonably necessary" to protect a child's physical or mental health. DeLeon, 11 Wn. App. 2d at 841 (quoting State v. Howard, 182 Wn. App. 91, 101, 328 P.3d 969 (2014)).

1. Clarity of the No Contact Order

---

[2] The State argues this court should not consider this assignment of error because Kennon "has not established that they represent manifest constitutional error." While that may be true, we still may, under RAP 2.5 and Peters, 10 Wn. App. 2d at 583, consider whether the condition is "erroneous as a matter of law," such as those that implicate "principles of due process," which is itself a "narrow category." Blazina, 182 Wn.2d at 834 (citing "vague community custody requirements" as "creat[ing] this sort of sentencing error). Regardless, we choose to exercise our discretion, but will focus exclusively on whether any legal error occurred.

Kennon does not challenge the constitutionality of the NCO as a whole, however interpreted, but rather he raises legal challenges to how it will be implemented in practice unless it is remanded for modification.

Specifically, Kennon first argues the court's written NCO is legally erroneous unless it is modified (a) to reflect the judge's oral ruling that the order may be modified in the future, and (b) to more accurately or more definitively reflect the frequency of contact allowed for each child.

At Kennon's resentencing hearing, at the time of imposing the modified NCO, the court stated:

> I will impose the five-year no-contact order, with a provision that you can write to *each* child twice a year; and, you can pick the dates: whether you want to pick a birthday . . . I'm going to allow a phone call once a year, for *each* child; they don't have to accept it . . . [b]ut, I want to give them the opportunity, if they want to choose to accept it . . .

(emphasis added).

The court further specified:

> Once they reach their majority, of course, they're free to come to the Court, and ask for those no-contact orders to be modified, or dropped altogether, so that they can come and visit you, if they wish to do that.

The written NCO in Kennon's judgment and sentence contains a handwritten notation next to each child's name providing the duration of "5 years," and a second notation stating, "Defendant may make one phone call/year & write 2 letters/year (see RCW 10.99 orders)."

6

As told by Kennon, the trial court's handwritten note could "erroneously be read to mean Kennon is allowed to make one phone call per year and write two letters per year *in total* for the three children considered as a group." (emphasis added).

There is no dispute that the NCO provision of Kennon's judgment and sentence lists the duration of the term, the protected persons, and cross-references the contemporaneously-entered RCW 10.99, which imposes other obligations upon Kennon. Kennon alleges no legal error in any of those provisions. Kennon appears to suggest that the legal error is in the clarity of the details of the trial court's orders.

Kennon, however, offers no binding authority to support the assertion that a trial court must provide details, first, on how and when a protected person may seek to modify an NCO.[3] "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We will not create such an obligation here.

Similarly, Kennon offers no authority to support the proposition that it is legal error for a court to fail to anticipate (mis)interpretations of its written order, or to fail to identify and resolve any possible inconsistency between it and the court's verbal

---

[3] Kennon claims that State v. Brown, No. 75627-3-1, slip op. at 7 (Wash. Ct. App. Feb. 12, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/756273.pdf. set forth such a "requirement." That claim is simply factually wrong. This court held, in that unpublished opinion, that courts "should" describe how conditions limiting a parent's time with their children may be modified, but did not require it.

order. Kennon certainly cites no authority that a trial court abuses its discretion if it does not do so. Where a party fails to provide citation to support a legal argument, we assume counsel, like the court, has found none. State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) (citing State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d 348 (2017)).

We find no legal error with that portion of the trial court's NCO.

2. Incidental Contact with Z.K.

Kennon asks us to remand the order to be clarified to allow incidental contact with Z.K., when Kennon contacts his children by phone, in writing, or through a future court process. Limiting incidental contact between parents, though inconvenient for co-parenting, is not an unconstitutional infringement on the fundamental right to parent.

The State has a compelling interest in preventing future harm to the victims of the crime and in protecting children. State v. Phillips, 6 Wn. App. 2d 651, 676, 431 P.3d 1056 (2018) (citing Rainey, 168 Wn.2d at 377). In both Foster and Phillips, the courts held that NCOs prohibiting the defendant's contact with the protected caregiving parent did not infringe on the defendant's fundamental right to parent their child. Phillips, 6 Wn. App. 2d at 676; State v. Foster, 128 Wn. App. 932, 939, 117 P.3d 1175 (2005).

Phillips is similar to the present case. There, Phillips' former spouse had an NCO protecting her from Phillips after he physically assaulted her while her child was present and while she was holding her infant. Phillips, 6 Wn. App. 2d at 656-57. The court imposed an NCO protecting the mother and the child, but not

the infant. Id. at 676. Phillips argued that preventing contact with the mother and child impermissibly infringed upon his right to parent the infant. Id. This court concluded "Although not having contact with [victim] will make access to his child more difficult, it does not necessarily restrict contact between Phillips and his child." Id.

Similarly, here, the State's interest in protecting the physical and mental well-being of the children is appropriately weighed against inconvenience toward Kennon. DeLeon, 11 Wn. App. 2d at 841. As Kennon implicitly concedes, it was not unreasonable for the trial court to conclude that an NCO protecting Z.K. was appropriate, particularly since Kennon attacked her in front of the children. See, e.g., Kennon, No. 80813-3-I, slip op. at 4. Further, K.K. explained her need for mental health treatment after the incident. The court did not abuse its significant discretion in not revising the NCO protecting Z.K. to accommodate the changes to her children's inter-related NCO.

In short, the trial court did not commit legal error in how it weighed the need for protection of Z.K. and the children against Kennon's ability to parent or how the NCOs structured or reflected that balance.

B.      Persistent Offender Accountability Act

Kennon argues the POAA is unconstitutional because, in short, courts disproportionately impose LWOP against Black people. However, the constitutionality of the POAA, despite its numerical racial disproportionality, is settled law. State v. Moretti, 193 Wn.2d 809, 830, 446 P.3d 609 (2019) ("Regardless of any personal opinions as to the wisdom of this statute, we have

9

'long deferred to the legislative judgment that repeat offenders may face an enhanced penalty because of their recidivism'") (quoting State v. Fain, 94 Wn.2d 387, 390-91, 402, 617 P. 2d 720 (1980)).  Thus, we decline to revisit this question as our prior decision is neither "clearly erroneous," under RAP 2.5(c), and there is no "clear showing that the rule is incorrect and harmful," as in State v. Gregory, 192 Wn.2d 1, 34, 427 P.3d 621 (2018).  On the record before us, Kennon has not presented sufficient evidence or reason to revisit or reverse our prior holding.[4]

C.      Victim Penalty Assessment and Interest on Restitution

After filing his opening brief, Kennon filed unopposed supplemental briefing to strike the VPA due to new legislation and caselaw.  The State does not contest Kennon's right to seek remand to strike the VPA.  We will accept that concession and remand this matter to strike the VPA fee.

The judgment and sentence also requires Kennon to pay restitution to the clerk of the court for costs associated with the victim's medical treatment.  The judgment also indicated that "[r]estitution shall bear interest pursuant to RCW 10.82.090." After the trial court resentenced him, our legislature revised RCW 10.82.090(2)-(3).  LAWS OF 2022, ch. 260 § 12.  The statute now allows the trial court to waive the imposition of interest on restitution.   RCW 10.82.090(2).  Kennon, thus, also asks this court, not to disturb the imposition of the restitution order itself, but to "remand for the trial court to address whether to impose interest

---

[4] Among the compilation of third-party statements, reports, and non-peer-reviewed studies about the criminal justice system generally, Kennon provides a declaration from an attorney on an unrelated matter.  The State asks us to disregard the declaration as procedurally improper.  To the extent we construe this request as a motion to strike, it is denied as moot given the resolution of this matter.

on the restitution" or "to waive interest on restitution." In support, Kennon cites to a recent decision of this court, State v. Ellis, 27 Wn. App. 2d 1, 6, 530 P.3d 1048 (2023), which he seems to suggest stands for the proposition that all legal financial obligations pending on direct appeal are subject to remand.

For its part, the State argues that Ellis is wrongly decided because a restitution "obligation is of an entirely different character than litigation costs payable to the government" and, thus, precedent permitting "costs" to be reconsidered while a matter is pending on appeal is inapposite.

At this time, this court has held in two published opinions, in very similar circumstances, that, "Although this amendment did not take effect until after [appellant's] resentencing, it applies to [the appellant] because this case is on direct appeal." Ellis, 27 Wn. App. at 6; see also State v. Reed, _ Wn. App. 2d _, 538 P.3d 946 (2023). In Reed, this court rejected an argument identical to the one the State made here, holding that "restitution interest is analogous to costs *for purposes of applying the rule* that new statutory mandates apply in cases, like this one, that are on direct appeal." Id. at 947 (emphasis added).

In other words, while the State may be right that restitution may be different than other litigation costs in other contexts, nothing in the cases upon which Ellis and Reed rely suggests that, *for purposes of assessing the applicability of this amendment* to that small universe of cases on direct appeal, that distinction should matter. See, e.g., State v. Ramirez, 191 Wn.2d 732, 749, 426 P.3d 714 (2018) (finding that the "precipitating event" for the statute there "concerning attorney fees and costs of litigation" was the "termination" of the defendant's case and that

"Ramirez's case was on appeal as a matter of right and thus was not yet final under RAP 12.7 when" the amendment there passed).  Our Supreme Court's decision in Ramirez did not turn on the fact that interest on restitution may not be a "cost" for other legal purposes.

Thus, we choose to follow this precedent, without adopting Kennon's sweeping view of Ramirez or Ellis.

III.    CONCLUSION

We affirm Kennon's judgment and sentence and remand to the trial court solely to strike the VPA fee and to consider whether to impose interest on the restitution it previously ordered after consideration of the relevant factors under RCW 10.82.090(2).

Díaz, J.

WE CONCUR: