# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>SIDFREDO VALDEZ,<br><br>Appellant. | No. 59330-1-II<br><br>UNPUBLISHED OPINION |

CHE, J. — Sidfredo F. Valdez appeals the imposition of no contact orders restraining him from contacting his two children and legal financial obligations following his conviction for fourth degree assault domestic violence.[1]

A jury found Valdez guilty of fourth degree assault against the mother of two of his biological children. As conditions of Valdez's judgment and sentence, the trial court imposed no-contact orders barring Valdez from having any contact with the mother and both children for five years. The trial court also imposed a $500 crime victim penalty assessment (VPA).

Valdez argues that the no-contact conditions protecting his children violate his fundamental right to parent. He also argues, and the State concedes, that the VPA should be stricken.

We hold that that trial court did not adequately explain its consideration and rejection of alternatives that would be less restrictive than a complete bar to contact with Valdez's children

---

[1] The jury found Valdez guilty of two counts of fourth degree assault domestic violence and the trial court merged the two counts at sentencing.

for five years. As a result, we cannot conclude the no contact order prohibiting any contact with Valdez's children for five years was reasonably necessary in light of Valdez's fundamental right to parent. Additionally, we accept the State's concession regarding striking the VPA.

Accordingly, we reverse the trial court's postconviction orders prohibiting Valdez from having any contact with two of his children for five years and remand for further proceedings consistent with this opinion. We also remand for the trial court to strike the VPA.

FACTS

Valdez and Courtney Moyer previously had a romantic relationship and they had two children together. In 2019, the two children were three and five years old.

In September 2019, Valdez arrived at the house where Moyer lived with both children. According to Moyer, Valdez arrived unannounced and uninvited and forced his way into the home. Moyer alleged that Valdez pulled out a knife, threatened to kill her, and pushed her up against a wall holding her neck, while their children clung to Moyer's leg screaming. One child screamed, "[d]addy what are you doing," which caused Valdez to stop. Rep. of Proc. (RP) (Jun. 1, 2023) at 428. Moyer grabbed a phone and ran to a neighbor's house where she called 911. The neighbor's video camera recording, which the trial court admitted as an exhibit, showed Moyer standing outside the neighbor's house with her children screaming beside her as she called 911. According to Valdez, Moyer invited him into the house, they began arguing, Moyer became physical first by pushing him, and, when Valdez grabbed her wrists, Moyer fell against a wall.

The State charged Valdez with one count each of first degree burglary, second degree assault, and felony harassment with allegations that each crime involved domestic

violence—committed against Moyer, an intimate partner—while armed with a deadly weapon, and while in the presence of minor children.

The jury acquitted Valdez of first degree burglary, second degree assault, and felony harassment, but convicted him guilty of lesser offenses of fourth degree assault committed against an intimate partner.

At sentencing, the State requested, among other conditions, three five-year no-contact orders: one protecting Moyer and two protecting each of their shared children. In its request, the State contended that the orders were "the only way to ensure that these children will not suffer further harm" and that, while the State alleged no physical harm to the children was at risk, the "[t]he emotional harm [was] obvious based on the evidence in this case." RP (Jun. 15, 2023) at 6.

The trial court sentenced Valdez to 274 days of total confinement, imposed a $500 VPA, and added multiple conditions to the sentence. The trial court ordered Valdez to attend a certified domestic violence program and a parenting class. Additionally, the trial court entered three five-year no-contact orders protecting Moyer and both children.

In its oral ruling, the trial court stated that it was "quite concerned about the children," noting that "[t]he last contact that [the children] had with . . . Valdez was extremely traumatic, as the Court viewed on the video tape, along with the jury."[2] RP (Jun. 15, 2023) at 21. The trial court noted that "it may be a very long time for his children to get over this event." RP (Jun. 15,

---

[2] The trial court then described how Valdez had not had any contact with his children since the altercation and that it appeared that Valdez did not prioritize his children during the time leading up to sentencing. Notably, the court's order on conditions of release, issued less than a week after the incident, prohibited Valdez from contacting Moyer and the two children.

2023) at 21.  The trial court acknowledged that imposing a no-contact order requires balancing "two very compelling interests," including the fundamental rights of a parent.  RP (Jun. 15, 2023) at 21.  The trial court then found:

> Based upon the record in this case, the Court finds that the five-year no-contact order as to the two children is reasonably necessary to accomplish an essential need of the State in this case and that that no-contact order is the least restrictive alternative that the Court has.
>
> The Court is imposing . . . treatment obligations.  And while balancing the interests, the Court believes that only after appropriate treatment and after a court determines that it is appropriate to have that contact would it be appropriate for the children to have contact with their father.  They observed the allegations that led to the charge that this jury found [Valdez] guilty of.
>
> . . . .
>
> The Court understands that fundamental right, but the Court also appreciates the harm done to the children by committing this offense in front of the children.  And, again, the Court saw their reaction in the video.  The Court heard that testimony.  And so based upon the balancing of the fundamental interests in this case, the Court believes that it is appropriate to issue the five-year no-contact order as to the two children who observed the conduct of . . . Valdez.

RP (Jun. 15, 2023) at 22-23.

Valdez appeals.

## ANALYSIS

### I.  SENTENCING CONDITIONS PROHIBITING CONTACT WITH BIOLOGICAL CHILDREN

Valdez argues that the sentencing conditions prohibiting him from having any contact with two of his biological children for five years violate his fundamental liberty interest as a parent.  We agree that the trial court failed to adequately explain its consideration and rejection of less restrictive alternatives.

A.    *Legal Principles*

We generally review sentencing conditions, including no-contact orders, for an abuse of discretion. *See State v. DeLeon*, 11 Wn. App. 2d 837, 840, 456 P.3d 405 (2020); *see also In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010). However, when those conditions interfere with a fundamental constitutional right, we engage in a "[m]ore careful review" of the conditions. *DeLeon*, 11 Wn. App. 2d at 840 (alteration in original) (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)).

A sentencing condition that interferes with a fundamental right "'must be reasonably necessary to accomplish the essential needs of the State and public order.'" *DeLeon*, 11 Wn. App. 2d at 840-41 (quoting *Warren*, 165 Wn.2d at 32). The conditions "'must be narrowly drawn' and '[t]here must be no reasonable alternative way to achieve the State's interest.'" *DeLeon*, 11 Wn. App. 2d at 841 (alteration in original) (quoting *Warren*, 165 Wn.2d at 34-35).

Parents have a fundamental constitutional right to the care, custody, and companionship of their children. *DeLeon*, 11 Wn. App. 2d at 841; *Warren*, 165 Wn.2d at 34. But the State also has a compelling interest to prevent harm to children and "an obligation to intervene and protect a child when a parent's actions or decisions seriously conflict with the physical or mental health of the child." *DeLeon*, 11 Wn. App. 2d at 841 (quoting *State v. Howard*, 182 Wn. App. 91, 101, 328 P.3d 969 (2014)). Washington law recognizes that one such compelling state interest includes protecting children from witnessing domestic violence. *Rainey*, 168 Wn.2d at 378; *State v. Ancira*, 107 Wn. App. 650, 652, 27 P.3d 1246 (2001). Thus, a court may impose a sentencing condition affecting a parent's fundamental right if such condition is reasonably necessary to prevent harm to a child. *DeLeon*, 11 Wn. App. 2d at 841.

The question of whether a condition is reasonably necessary is "delicate and fact-specific." *Rainey*, 168 Wn.2d at 377. To impose a sentencing condition affecting the right to parent, the trial court must consider, on the record, both (1) whether the proposed conditions are narrowly drawn and (2) whether less restrictive alternative exists to prevent harm to the children. *DeLeon*, 11 Wn. App. 2d at 841.

B.      *The Trial Court Did Not Adequately Consider Whether a Less Restrictive Alternative Existed*

Valdez argues that the trial court abused its discretion in imposing the no-contacts orders with his children because it was "intent on punishing Valdez for his past behavior" and inadequately explained why the conditions were reasonably necessary. Br. of Appellant at 17. Therefore, Valdez argues that we should remand for the trial court to reconsider the necessity and scope of the orders. While we disagree with Valdez's characterization of the trial court's intent, we agree that the trial court did not adequately explain its consideration of and reasons for rejecting less restrictive alternatives.

Here, the trial court acknowledged Valdez's constitutional right to parent and also identified the State's compelling interest in preventing harm to Valdez's children, including that resulting from the children witnessing the assault on their mother. In addition to noting the "extremely traumatic" contact the children had with Valdez during the assault, the trial court also explained how it was concerned with the continuing harm resulting from both the event as well as Valdez's behavior without treatment. RP (Jun. 15, 2023) at 21 ("it may be a very long time for his children to get over this event"), 22 ("the Court believes that only after appropriate treatment . . . would it be appropriate for the children to have contact with their father"). As

Washington law has recognized, prevention of harm to children, including harm to their mental health, is a compelling state interest. *DeLeon*, 11 Wn. App. 2d at 841.

While the trial court discussed on the record the State's interest and the trial court found that five-year no-contact orders were both reasonably necessary and "the least restrictive alternative that the Court has," it did not adequately address what less restrictive alternatives it considered in coming to its determination. RP (Jun. 15, 2023) at 22. Examples of alternatives that are less restrictive than a complete bar to contact for five years include contact by phone, letter writing, supervised visits or a gradual increase in contact after Valdez completed treatment. Although it may be possible that no such alternatives would be appropriate here, it was error for the trial court to not consider less restrictive alternatives on the record.[3] *See DeLeon*, 11 Wn. App. 2d at 841.

While we disagree with Valdez's contention that the trial court did not have legitimate concerns in imposing the conditions, we hold that the trial court did not adequately explain on the record whether less restrictive alternatives available to it could also prevent harm to Valdez's

---

[3] In addition to being reasonably necessary in scope, no-contact orders such as these must also be reasonably necessary in duration. *State v. Torres*, 198 Wn. App. 685, 690, 393 P.3d 894 (2017); *see also Rainey¸* 168 Wn.2d at 380-81. Our Supreme Court has noted:

> The duration and scope of a no-contact order are interrelated: a no-contact order imposed for a month or a year is far less draconian than one imposed for several years or life. Also, what is reasonably necessary to protect the State's interests may change over time. Therefore, the command that restrictions on fundamental rights be sensitively imposed is not satisfied merely because, at some point and for some duration, the restriction is reasonably necessary to serve the State's interests. The restriction's length must also be reasonably necessary.

*Rainey*, 168 Wn.2d at 381.

children given the fundamental rights implicated. Therefore, we remand to the trial court for further proceedings consistent with this opinion.[4]

## II. VPA

Valdez argues that the VPA should be stricken from his judgment and sentence because of the legislature's recent elimination of VPAs for indigent persons. The State concedes that the VPA should be stricken. We accept the State's concession and remand to the trial court to strike the VPA.

Pursuant to a recent change to the statute governing legal financial obligations, effective July 1, 2023, courts cannot impose a VPA if the trial court found that the defendant was indigent as defined in RCW 10.01.160(3) at the time of sentencing. RCW 7.68.035(4); Laws of 2023, ch. 449, § 1; *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Even if the revised statute was not in effect at the time of sentencing, the amendment applies to cases on direct appeal. *Ellis*, 27 Wn. App. 2d at 16.

Because Valdez brings a direct appeal and the State concedes that Valdez qualified for VPA waiver, we accept the State's concession that the VPA should be stricken from Valdez's judgment and sentence and remand to the trial court to strike it. *See Ellis*, 27 Wn. App. 2d at 16.

## CONCLUSION

We reverse the trial court's postconviction orders prohibiting Valdez from having any contact with two of his children for five years and remand for further proceedings consistent with

---

[4] Valdez also contends that the trial court abused its discretion by relying on facts unrelated to the circumstances of the crime for the purposes of considering these conditions at sentencing. Because we hold the trial court's explanation inadequate without these facts, we do not reach the merits of this argument.

No. 59330-1-II

this opinion. We also remand for the trial court to strike the VPA from Valdez's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Che, J.

We concur:

_____
Glasgow, J.

_____
Cruser, C.J.