# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54285-4-II |
| Respondent, | |
| v. | |
| WILLIE NATHANIEL BROWN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. – Willie Brown was a father figure to his girlfriend's twin daughters. By the time the girls were in middle school, Brown was sexually assaulting the girls and paying them after the assaults. The abuse escalated as the girls got older and included encounters Brown initiated while the girls were sleeping. When one of the daughters was 19, she reported Brown's crimes to the police. Brown was arrested, and in recorded prison calls Brown admitted to being "guilty of something."[1] At trial, Brown's recorded calls were played for the jury. During closing argument, the prosecutor, incorrectly, claimed that Brown said he was "guilty of the rest" in the calls. Brown was convicted of multiple counts of rape second degree for each victim and multiple counts of rape of a child for each victim. Brown was also convicted of one count commercial sex abuse for each victim.

---

[1] Ex. 55 (Feb. 22, 2018 at 6 min., 40 sec. to 7 min., 05 sec.); Ex. 55 (Feb. 23, 2018 7:38 a.m. at 6 min., 13 sec. to 6 min., 28 sec.)

As it relates to his trial, Brown argues that two of his rape second degree convictions (those from count 6 (against TLW) and count 14 (against TAW)) that were based on inability to consent were not supported by sufficient evidence. Additionally, Brown argues that his child rape convictions for TLW (count 2 and count 3) violate double jeopardy because the time periods for those counts overlap with count 6 and they were based on the same underlying conduct as count 6. Further, Brown challenges all of his convictions on the grounds that the State engaged in prosecutorial misconduct when it misquoted his remark from the jail call and that his attorney provided ineffective assistance when he failed to object to the prosecutor's misconduct.

As it relates to his sentence, Brown argues that he should be resentenced because his commercial sex abuse convictions were erroneously classified by the trial court as class B felonies instead of class C felonies; that his previous convictions for unlawful possession of a controlled substance are unlawful; that the community custody provision prohibiting him from seeing his minor child violated his right to parent; and that the community custody supervision fee must be stricken. Brown also raises additional claims of error in a statement of additional grounds (SAG).

With respect to Brown's convictions, we hold that there was insufficient evidence to sustain Brown's conviction for rape in the second degree in count 14, and his conviction in count 3 violates double jeopardy. However, although the prosecutor misquoting Brown was improper, there was not a substantial likelihood that the improper statement affected the jury's verdict. Similarly, Brown's ineffective assistance of counsel claim fails because Brown fails to show he was prejudiced by counsel's conduct.

With respect to Brown's sentence, we remand for the trial court to reclassify his commercial sex abuse convictions as class C felonies, strike Brown's convictions for unlawful

possession of a controlled substance from his criminal history and offender score, and resentence Brown in light of his new offender score and criminal history. On remand, the trial court must conduct an inquiry on the record to determine whether Brown should be prohibited from having contact with his minor son. Finally, regarding the supervision fee, the trial court may reconsider whether to impose the fee in light of Brown's indigency, and we decline to consider any of the issues Brown raises in his SAG. Accordingly, we affirm in part, reverse in part, and remand to vacate count 3 and dismiss count 14 with prejudice, and for resentencing.

FACTS

I. UNDERLYING EVENTS

In 2001, Willie Brown met Heidi Stevens. Stevens had twin daughters, TLW and TAW, born May 20, 1998, and a son, FW, who was three years older than his sisters. Brown and Stevens started dating, and although Brown always kept a separate residence, he would often stay at Stevens' house, except between March 2009 and February 2011 when he was away from the family and did not have contact with TLW and TAW. Brown had a parental relationship with the twins, and they referred to him as "dad" or "stepdad." 5 Verbatim Report of Proceedings (VRP) at 416, 535; 6 VRP at 653.

A. TLW

TLW first remembered Brown doing "something sexual to [her]" in either fifth or sixth grade. 5 VRP at 444. Brown continued to do "something sexual" to her every year he was staying at the house, but the encounters were sporadic. *Id.* at 472. When the abuse started, Brown touched "[her] area," which she described as her vagina, with his hands and mouth. *Id.* at 453. After TLW

started going through puberty, and around when she was in eighth or ninth grade, Brown started using his penis as well. After every encounter, Brown offered or gave TLW money.

On one occasion, near the end of middle school or the start of high school, Brown came into TLW's room when Stevens was not home and TLW was on her bed reading a book. Brown took off TLW's pants and started licking her "area." *Id.* at 459. TLW tried unsuccessfully to push Brown away.

On another occasion, when TLW was doing the dishes and Stevens was out of the house, Brown came up behind TLW. Brown pressed up against TLW and put his hands under her clothes and inserted his fingers in her vagina. TLW tried to move away, but Brown grabbed her and pulled her back. Brown then pulled down her pants and put his penis inside her vagina. TLW was approximately in eighth, ninth, or tenth grade.

When TLW was in middle school, Brown entered TLW's room while she was sleeping and assaulted her on multiple occasions. TLW could not remember when these events occurred, but she knew it started in middle school and happened when she shared a room with her sister. In 2013, when FW moved out of the house approximately a month after he graduated from high school, TLW started staying in his room.

In middle school, TLW told Stevens what Brown was doing, but Stevens did not believe TLW and told TLW to apologize for lying. Early in 2017, TLW disclosed to a friend and her boyfriend, Luis Cantu, what Brown had done to her.

B. TAW

TAW suffered from developmental delays and took special education classes, but she progressed through school at the same rate as TLW and graduated at the same time. Brown was

4

also sexually abusing TAW in middle school. The abuse happened "[o]nce in a while" and occurred when no one else was home. 5 VRP at 550. Brown had a sexual encounter with TAW at least once every year, and he would leave money for TAW after every encounter. The abuse became more frequent and "worse" as TAW got older. 6 VRP at 576.

On two occasions, Brown entered TAW's room while she was sleeping. On one occasion, when TAW was staying in FW's bedroom around the end of high school in 2016, TAW woke up to Brown touching her legs and felt his hands going up to her vagina. TAW tried to push and kick Brown, but was unable to get him off her. Despite TAW's efforts, Brown took off her pants and put his penis inside her. With respect to the other occasion, TAW could not remember any details of the assault other than at some point Brown put his penis inside her.

TAW also told Stevens what was happening, but her mother did not believe her. Like TLW, TAW told Cantu and a friend that Brown had abused her.

## II. LEGAL PROCEEDINGS

### A. CHARGES

In February 2018, Brown raped TLW while she and Brown were alone in the home. That same day, TLW reported Brown's crimes to the police. After TLW went to the police, TAW also disclosed that Brown had been raping her and that he had assaulted her the day before TLW went to the police. After speaking with the police, TLW and TAW went to the hospital and were examined by a sexual assault nurse examiner.

Brown was arrested the same day TLW reported Brown's crimes to the police, and he was charged with second degree rape and second degree rape of a child with TLW as the victim; he was also charged with second degree rape and third degree child molestation with TAW as the

victim. The police obtained a search warrant for Brown's person, and while he was being booked at Pierce County jail, the police swabbed Brown's mouth and penis.

A forensic scientist, Jennifer Hayden, evaluated the sexual assault kits collected from TLW and TAW, the swabs from Brown, and a reference DNA sample obtained from Stevens. Hayden found DNA other than Brown's on his penis swab and ruled out that the DNA was Stevens' or TLW's. However, Hayden found it was 13 times more likely that the other person's DNA on Brown's penis was TAW's than a random person's.

While in custody, Brown made phone calls, which were recorded, to family members and to Stevens. In the calls, Brown tried to convince Stevens to get her daughters to change their statements.

Brown was ultimately tried and convicted on the following charges:

TLW

- Count 2 - Second degree child rape, between May 20, 2010 and May 19, 2012.
- Count 3 - Third degree child rape, between May 20, 2012 and May 19, 2014.
- Count 4 - Commercial sex abuse of a minor, between May 20, 2008 and May 19, 2016.
- Count 5 - Second degree rape by force, between May 20, 2008 and May 19, 2013.
- Count 6 - Second degree rape by inability to consent, between May 20, 2008 and May 19, 2013.
- Count 7 - Second degree rape by force or inability to consent, between May 20, 2013 and February 20, 2018.
- Count 8 - Witness tampering.

TAW
- Count 10 - Second degree child rape, between May 20, 2010 and May 19, 2012.
- Count 11 - Third degree child rape, between May 20, 2012 and May 19, 2014.
- Count 12 - Commercial sex abuse of a minor, between May 20, 2008 and May 19, 2016.
- Count 13 - Second degree rape by force, between May 20, 2008 and May 19, 2013.
- Count 14 - Second degree rape by inability to consent, between May 20, 2008 and May 19, 2013.
- Count 15 - Second degree rape by force or inability to consent, between May 20, 2013 and February 20, 2018.

- Count 16 - Witness tampering.

The rape second degree convictions under counts 6 and 14, based on inability to consent, were for conduct occurring when both victims were under the age of 16.

B. TRIAL

*1. Testimony*

TLW and TAW testified consistent with the facts above. TLW also provided more details on an assault that occurred while she was sleeping. TLW testified that while she was asleep Brown took her pants off, touched and licked her vagina, and then put his penis in her. The prosecutor asked if she woke up at some point during the assault. TLW explained that she woke up when Brown was spreading her legs. TLW tried to turn away from Brown, but Brown forced her legs open. The prosecutor asked TLW what happened after Brown forced her legs open, and TLW testified that after forcing her legs open Brown put his penis in her vagina.

TLW also testified that she could not remember anything happening to her while she was staying in FW's room and none of the incidences she described at trial happened when she was in FW's room.

The State also called the friends that TLW and TAW told about the abuse. The friends all testified that TLW, TAW, or both had told them about Brown's abuse.

Hayden, who analyzed a swab of Brown's penis, also testified and explained that based on her statistical analysis the DNA found on Brown's penis was 13 times more likely to be TAW's DNA than a random person's. Brown had been at Stevens' home the two days prior to the swab, and Stevens and TLW were both ruled out.

Brown also testified, and he claimed he never engaged in sexual contact with TAW and he only engaged in consensual sexual contact with TLW after she turned 18.

*2. Recordings*

Finally, the day before closing argument, recordings of Brown's phone conversations with his family and Stevens were played for the jury. In the recordings, Brown said, "There's not really much anybody can do, you know, because it is what it is, but they could change two of those charges . . . because two of them aren't true . . . I am guilty of something." Ex. 55 (Feb. 22, 2018 at 6 min., 40 sec. to 7 min., 05 sec.). "I put you guys through enough. But if the truth -- I mean, if statements -- statements were changed and the truth was to come out, then there is a chance that I could get out of here one day." *Ex. 55 (Feb. 23, 2018 7:38 a.m.* at 4 min., 15 sec. to 4 min., 35 sec. "I have never forced anybody anything, and that's on my life, baby. And if I could just get that part of it erased. The other part – I mean the other part, I'm guilty of something. I know I'm guilty of something." *Id.*, at 6 min., 13 sec. to 6 min., 28 sec. "They could bring it down to a third degree for one charge because two of them are totally not true." *Id.*, at 12 min. to 12 min., 10 sec.

Brown also told Stevens, "[L]et them know that if - - if money was exchanged, if a bill was made, then it's not what they're saying it is. . . . If they agreed to it and nothing was forced." Ex. 55 (Feb. 24, 2018 at 1 min., 30 sec. to 1 min., 48 sec.). "[I]f anything was exchanged . . . there was an agreement to do whatever, then it is not what they are saying it is." *Id.*, at 3 min., 50 sec. to 4 min.

C. Jury INSTRUCTIONS

The jury instructions that are relevant to this appeal are as follows.

For count 6, second degree rape, the jury was instructed that to convict they must find that Brown had sexual intercourse with TLW when TLW "was incapable of consent by reason of being physically helpless or mentally incapacitated" on or between May 20, 2008 and May 19, 2013. Clerk's Papers (CP) at 69. The to-convict instruction for count 14 was the same as for count 6, except TAW was the named victim.

The jury was also instructed that the evidence consisted of the witness' testimony and admitted exhibits. The court told the jury that the lawyers' statements are only intended to help the jury understand the evidence, but the lawyers' statements are not evidence and any statement not supported by the evidence must be disregarded.

D. CLOSING ARGUMENT

With respect to count 2, which charged second degree child rape against TLW, the prosecutor elected two specific incidents that would satisfy this charge. One incident was when TLW was in the kitchen doing the dishes and the other incident was when Brown entered TLW's bedroom while she was reading. The State distinguished the underlying conduct charged in count 6, second degree rape against TLW, from the conduct charged in count 2, by arguing that the conduct forming the basis for count 6 was the incident or incidents where Brown would enter TLW's room while she was sleeping and sexually assault her while she was unable to consent.

Regarding count 3 (child rape third degree against TLW) the prosecutor explained the time period for count 3 was "really the first two years of high school." 11 VRP at 1264. And, "It's important to note that June 2013, this is when [FW] graduates high school. This is in that time

9

period." *Id.* The prosecutor noted it was important that FW moved out in this time because "specifically [TAW] described events that happened in that middle room." *Id.* "So those middle room instances for those periods [TLW] had the room to herself, these were happening in the freshman and sophomore years." *Id.*

The prosecutor also discussed Brown's recorded calls and misquoted Brown on three different occasions. The prosecutor claimed, "[Brown] says, 'I'm guilty of something. They could change. . . . two of those charges, *but the rest are true*.' " *Id.* at 1286 (emphasis added). Later the prosecutor again misquoted Brown by saying "you have all the admissions the defendant made during these jail calls. You have both the direct admissions where he specifically says, 'They can change two of these counts, *but I'm guilty of the rest*.' . . . [Brown is] making direct admissions to some of these crimes." *Id.* at 1292 (emphasis added). The prosecutor misquoted Brown again, "He has this line, 'They could change two of these charges, *but I'm guilty of the rest*.' " *Id.* at 1321 (emphasis added).

E. CONVICTION AND SENTENCING

The jury convicted Brown on every count except on counts 1 and 9, which charged first degree child rape against each victim.

For Brown's convictions for commercial sex abuse of a minor, the court sentenced Brown to 120 months, which was the high end of the standard range for a class B felony. For his third degree child rape and witness tampering convictions, the court also sentenced Brown to the high end of the standard range, 60 months. For the remaining eight convictions, the court sentenced Brown to a minimum of 600 months and a maximum sentence of life in prison. Finally, the court

ordered Brown to have no contact with minor children, including relatives, as a part of his community custody.

Brown appeals his convictions and sentence.

DISCUSSION

I. INSUFFICIENT EVIDENCE

Brown argues that the State failed to prove two of his convictions for second degree rape that were predicated on the victims' inability to consent (counts 6 and 14).

We conclude there was sufficient evidence for count 6, but insufficient evidence for count 14.

A. LEGAL PRINCIPLES

*1. Sufficiency of the Evidence*

The State must prove, beyond a reasonable doubt, each element of a crime. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). When an appellate court reviews challenges to the sufficiency of the evidence to sustain a conviction, we consider, "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *Id.* at 105. When a defendant challenges the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences arising from that evidence. *Id.* at 106. These inferences are drawn in favor of the State and " 'interpreted most strongly against the defendant.' " *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Direct and circumstantial evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). We defer to the jury, the trier of fact, on issues of witness credibility, conflicting testimony, and persuasiveness of the evidence. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840, 844 (2014). We

review a challenge to the sufficiency of the evidence de novo. *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019).

### 2. Second Degree Rape

When the victim is incapable of consent by reason of physical helplessness or mental incapacity and the defendant engages in sexual intercourse with the victim, the defendant is guilty of second degree rape. RCW 9A.44.050(1)(b).[2] Sexual intercourse is any act of sexual contact involving the victim's sex organs and the defendant's mouth, and it also "has its ordinary meaning and occurs upon any penetration, however slight." RCW 9A.44.010(1).

### B. ANALYSIS

### 1. Count 6—Rape Second Degree against TLW

Brown argues there was insufficient evidence to support count 6 because TLW testified that she woke up when Brown was spreading her legs but did not clearly state whether Brown spread her legs before or after the oral sex. Brown argues it is reasonable to believe that Brown must have moved TLW's legs, waking TLW, prior to the oral sex.

Brown misunderstands our standard of review on a claim of insufficiency of the evidence. Brown argues the evidence was insufficient because there was a reasonable inference that would have allowed the jury to find him not guilty. We do not consider on appeal whether the evidence supported a reasonable inference in the defendant's favor. *Homan*, 181 Wn.2d at 106. We consider only whether there was sufficient evidence to sustain the verdict. *Id.* at 105. Inferences are to be drawn in the State's favor, not the defendant's favor, and these inferences are " 'interpreted most

---

[2] RCW 9A.44.050 was amended in 2021. LAWS OF 2021, ch. 142, § 1. Because this amendment does not affect our analysis we cite to the current version of the statute.

strongly *against*' " the defendant. *Id.* at 106 (emphasis added) (quoting *Salinas*, 119 Wn.2d at 201).

Here, there was sufficient evidence to find that TLW was incapacitated at the time of sexual intercourse. TLW testified that there were multiple times Brown entered her room at night. While TLW was sleeping Brown took her pants off, touched her vagina, performed oral sex on her, and then put his penis in her. The prosecutor asked TLW if she woke up at some point, and TLW explained she woke up when Brown was spreading her legs. When TLW woke up, she tried to turn away but Brown grabbed her legs and forced them open. The prosecutor then asked what happened after Brown forced her legs open, and TLW testified that Brown put his penis in her vagina. Considering the evidence in the light most favorable to the State, there was sufficient evidence to support the jury's finding that TLW was asleep when Brown engaged in oral sex and she did not wake up until Brown was spreading her legs to penetrate her.

*2. Count 14—Rape Second Degree against TAW*

Brown argues that there was insufficient evidence for count 14 because the State failed to provide any evidence that TAW was raped when she was asleep within the dates listed in the jury instructions. The State concedes that there was insufficient evidence for count 14. We agree with Brown and accept the State's concession.

The State was required to prove that Brown raped TAW while she was incapable of consent on or between May 20, 2008 and May 19, 2013. However, TAW testified there were only two encounters with Brown when she was sleeping. One encounter occurred when TAW was in FW's room, but TAW only started sleeping in FW's room in 2016. As for the other encounter, TAW could not remember when it occurred. Accordingly, because there is no evidence that Brown

engaged in sexual intercourse with TAW at a time when she was unable to consent during the relevant charging period, there was insufficient evidence to support count 14.

## II. DOUBLE JEOPARDY

Brown argues that his convictions in counts 2 and 3 violate double jeopardy because the time periods charged in those counts overlap with the time period charged in count 6 (rape in the second degree) and the State did not clearly elect a corresponding act for each of these counts. Brown contends that the jury might have found Brown guilty of rape second degree in count 6 based on the same underlying conduct they relied on for the convictions in counts 2 or 3.

The State contends that it was manifestly apparent from the State's closing argument that it was electing distinct acts for counts 2, 3, and 6.

We agree with the State regarding counts 2 and 6, but disagree regarding counts 3 and 6.

### A. LEGAL PRINCIPLES

Under the United States and Washington constitutions, a defendant is provided a constitutional guaranty against double jeopardy, protecting a defendant against multiple punishments for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). "A 'defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law.' " *State v. Fuentes*, 179 Wn.2d 808, 824, 318 P.3d 257 (2014) (quoting *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)). Convictions are not the same in fact if each count arises out of a separate and distinct act. *Id.* "[I]f it is not clear," after considering the evidence, arguments, and instructions "that it was 'manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act, there is a double jeopardy

14

violation." *Mutch*, 171 Wn.2d at 664 (emphasis omitted) (second alteration in original) (quoting *State v. Berg*, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)). We review a claim of double jeopardy de novo. *Id.* at 661-62

B. ANALYSIS

*1. Same in Law*

As Brown notes, the supreme court has concluded that second degree rape based on an inability to consent is the same in law as second degree rape of a child. *State v. Hughes*, 166 Wn.2d 675, 683-84, 212 P.3d 558 (2009). *Hughes* concluded that even though "the crimes facially differ, both statutes require proof of nonconsent because of the victim's status." *Id.* at 684. The court further stated that "[r]egardless of whether nonconsent is proved by the age of the victim and the age differential between the victim and the perpetrator, or by the mental incapacity or physical helplessness of the victim, both statutes protect individuals who are unable to consent by reason of their status." *Id.*

Third degree rape of a child, like second degree rape of a child, protects individuals who are unable to consent by reason of their status. The victim's age and the age difference between the victim and the perpetrator are the only differences between second and third degree rape of a child. RCW 9A.44.076;[3] RCW 9A.44.079.[4] Thus, the analysis in *Hughes* regarding nonconsent based on the victim's status is the same for both second and third degree rape of a child.

---

[3] RCW 9A.44.076 was amended in 2021. LAWS OF 2021, ch. 142, § 3. Because this amendment does not affect our analysis we cite to the current statute.

[4] RCW 9A.44.079 was amended in 2021. LAWS OF 2021, ch. 142, § 4. Because this amendment does not affect our analysis we cite to the current statute.

*2. Same in Fact*

As we note above, our supreme court held in *Hughes* that rape in the second degree by reason of inability to consent and rape of a child are the same in law. Thus, in order to establish a double jeopardy violation, Brown must show that the crimes are the same in fact—that is, that the act of sexual intercourse relied on to prove count 6 was the same act of sexual intercourse relied on to prove either count 2 or count 3.

a. Second Degree Child Rape - Count 2

Here, the State clearly elected the acts upon which it relied in support of count 2 (child rape second degree against TLW). The first act occurred when TLW was doing the dishes, and the other act was when TLW was reading in her bedroom. These acts were distinct from the act or acts that the State relied on for count 6, which consisted of only the incidents where Brown attacked TLW while she was sleeping and unable to consent. By electing clearly distinct acts for count 2 and count 6, the State made it manifestly apparent that it was not seeking to punish the same act twice. Thus, there was no double jeopardy violation arising from the dual judgments on count 2 and count 6.

With respect to count 3 (child rape third degree against TLW), Brown's right to be free from double jeopardy was violated because the time periods overlapped and the State failed to make it manifestly apparent to the jury that the conduct giving rise to count 3 was distinct from the conduct giving rise to count 6. First, the time periods for the counts 3 and 6 overlapped for a year between May 20, 2012 and May 19, 2013. And although the State clearly elected the incidents while TLW was sleeping for count 6, the State failed to identify the specific conduct for count 3. Rather, the State appeared, in closing argument, to limit count 3 to the events that occurred in 2013

in FW's room after FW graduated in June, in an apparent attempt to distinguish the time periods when the conduct occurred, removing the time overlap. But TLW, in her testimony, clearly stated that nothing happened while she was staying FW's room.

Second, we note that the prosecutor also mentioned *TAW* when discussing count 3, further obfuscating what conduct it elected as supporting count 3. Accordingly, we cannot say that the State made it manifestly apparent for the jury that counts 3 and 6 were based on separate and distinct conduct, particularly when it is unclear what conduct the State even relied on to support the conviction in count 3.[5]

The State argues that it distinguished counts 3 and 6 by limiting the conduct for count 6 to middle school and the conduct for count 3 to ninth and tenth grade. This is inaccurate. In closing, the prosecutor acknowledged that count 6 included "most of ninth grade as well." 11 VRP at 1266. And we note that TLW did not testify that the conduct for count 6 stopped before high school; instead, she merely said that it *started* in middle school.

Accordingly, because the State failed to make it manifestly apparent that it elected conduct for count 3 that was separate and distinct from the conduct it relied on for count 6, the conviction in count 3 violates Brown's right to be free from double jeopardy and the court must strike count 3 from the judgment and sentence.

### III. PROSECUTORIAL MISCONDUCT

Brown argues the State committed prosecutorial misconduct in its closing argument when it misrepresented Brown's statements in the recorded calls that were admitted into evidence.

---

[5] We note that the State did not propose, nor did the trial court provide, a jury instruction informing the jury that each count "must be based on a separate and distinct criminal act." *See Mutch*, 171 Wn.2d at 662.

We conclude that even though the prosecutor's comments were improper, Brown has not shown a substantial likelihood that the misconduct affected the verdict. Thus, his prosecutorial misconduct claim fails.

## A. LEGAL PRINCIPLES

A criminal defendant's right to a fair trial is guaranteed under article I, section 22 of the Washington Constitution and under the Sixth and Fourteenth Amendments to the United States Constitution. *State v. Gouley*, 19 Wn. App. 2d 185, 200, 494 P.3d 458 (2021), *review denied*, No. 100279-3 (Wash. Feb. 2, 2022). "Where there has been prosecutorial misconduct in obtaining a conviction, the criminal defendant may have been deprived of the constitutional right to a fair trial." *Id.*. In reviewing alleged misconduct, we review the prosecutor's remarks "in the context of the whole argument, the issues of the case, the evidence addressed in argument, and the instructions given to the jury." *State v. Scherf*, 192 Wn.2d 350, 394, 429 P.3d 776 (2018).

"We employ one of two tests to determine whether reversal is required based on prosecutorial misconduct." *Gouley*, 19 Wn. App. 2d at 200; *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). "When the defendant objected to the claimed misconduct below, the defendant must show (1) that the prosecutor's remarks were improper, and (2) that there is a substantial likelihood the misconduct affected the verdict." *Gouley*, 19 Wn. App. 2d at 200. However, if the defendant does not object to the remarks, then the defendant waives the prosecutorial misconduct claim unless the defendant demonstrates "(1) that comments were improper, (2) that the prosecutor's comments were both flagrant and ill-intentioned, (3) that the effect of the improper comments could not have been obviated by a curative instruction, and (4) a

substantial likelihood the misconduct affected the verdict." *Id.* at 201; *Emery*, 174 Wn.2d at 760-61.

"When a non-objecting defendant fails to show that the improper remarks were incurable, the claim 'necessarily fails and our analysis need go no further.' " *Gouley*, 19 Wn. App. 2d at 201 (quoting *Emery*, 174 Wn.2d at 764). However, a defendant could succeed in showing that a curative instruction could not have obviated the prejudice engendered from the improper remarks, thus avoiding waiver, and still fail to demonstrate a substantial likelihood that the misconduct affected the verdict. *Emery*, 174 Wn.2d at 764 n.14; *Gouley*, 19 Wn. App. 2d at 201.

"In evaluating whether the defendant has overcome waiver in cases where an objection was not lodged, we will 'focus less on whether the prosecutor's misconduct was flagrant or ill-intentioned and more on whether the resulting prejudice could have been cured.' " *Gouley*, 19 Wn. App. 2d at 201 (quoting *Emery*, 174 Wn.2d at 762).

B. ANALYSIS

*1. Improper Statements*

Brown contends that the prosecutor committed misconduct by repeatedly misquoting Brown's statements in the jail phone calls, claiming that Brown said, " 'but the rest are true.' " Br. of Appellant at 35 (quoting 11 VRP at 1286). Brown notes that he actually said " 'two of [the charges] aren't true . . . . [But] I am guilty of something.' " *Id.* at 14-15 (quoting Ex. 40). Brown argues that the prosecutor twisted his words into a confession to 12 of the 14 sexual offense charges he faced at trial, and also notes that the jury was unaware of the number, and nature, of the charges he was facing at the time of his statements.

The State does not deny that it misquoted Brown, but contends that the prosecutor's remarks were not improper because the State's intent was merely to show that Brown had a guilty conscience.

We agree with Brown that the prosecutor's repeated misquoting of his remarks was improper. By arguing that Brown "has this line" and that Brown made "direct admission[s]", the prosecutor went beyond merely arguing that Brown had consciousness of guilt. 11 VRP at 1292, 1321. The prosecutor misquoting the defendant in this way is analogous to the prosecutor introducing a fact not in evidence, and it is well settled that this is improper. *See State v. Warren*, 165 Wn.2d 17, 29, 195 P.3d 940 (2008).

*2. Likelihood of Prejudice*

Even assuming that Brown has demonstrated both that the prosecutor's remarks were flagrant and ill-intentioned and that they could not have been obviated by a curative instruction, Brown must nevertheless show that there was a substantial likelihood that the misconduct affected the verdict.

The State contends that the prosecutor's misstatement could not have affected the jury's verdict because Brown's actual quotation was provided to the jury on a slide in its power point presentation during closing argument, and because the jury actually heard Brown's words on the recording of the call. We agree, and further note that the jury was instructed that the statements made by the lawyers during closing argument are not evidence. The jury was told to disregard any remark, statement, or argument that was not supported by the evidence. "Jur[ies] are presumed to follow the court's instructions." *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015). Thus, the jury presumably knew that the prosecutor misstated the facts in closing argument.

20

Additionally, the State presented a strong case. Both victims were consistent in their accounts of the abuse they suffered from Brown. The onset of the abuse they described began at roughly the same time, and it later escalated. The victims' accounts of the sexual abuse were also similar. They testified that the abuse occurred when their mom was out of the house or while they were sleeping. They also both testified that Brown gave them money after he abused them. Both TLW and TAW disclosed the abuse to multiple people prior to coming forward to the police, at times years before TLW reported Brown to the police.

Although Brown categorically denied having sexual contact with TAW, the police found TAW's DNA on Brown's penis. This could only have caused severe damage to Brown's credibility in the eyes of the jury. Additionally, in the recordings Brown told Stevens to "let *them* know that if - - if money was exchanged, if a bill was made, then it's not what *they're* are saying it is. . . . If *they* agreed to it and nothing was forced." Ex. 55 (Feb. 24, 2018 at 1 min., 30 sec. to 1 min., 48 sec.). Brown also said "if anything was exchanged, . . . there was an agreement, . . . then it is not what *they* are saying it is." *Id.*, at 3 min., 50 sec. to 4 min. The recording demonstrated that Brown believed he had sexual contact with *both* TLW and TAW despite Brown denying ever having any sexual contact with TAW.

Brown does not point us to anything in the record suggesting that the jury's verdict would have been different absent the prosecutor's improper remarks. Accordingly, Brown does not persuade us that there was a substantial likelihood the misconduct affected the jury's verdict.[6]

---

[6] Brown also contends that he was deprived of effective assistance of counsel when his attorney failed to object to the prosecutor's misstatements of the evidence. In an ineffective assistance of counsel claim, the defendant must show a reasonable probability that but for counsel's deficient performance, the outcome of the trial would have been different. *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017). As we state above, Brown fails to show there was a substantial

## IV. COMMERCIAL SEX ABUSE CONVICTIONS

Brown argues that the trial court erroneously classified his commercial sex abuse convictions (counts 4 and 12) as class B felonies, when they should have been considered class C felonies. Brown notes that the charging period for counts 4 and 12 was from May 2008 to May 2016, and he contends because the legislature amended this crime to a class B felony from a class C felony in June 2010, his convictions should be class C felonies instead of class B felonies.

The State concedes this issue, and we accept the State's concession. The misclassification of Brown's convictions led the court to impose a sentence beyond its authority.

In *State v. Parker*, 132 Wn.2d 182, 191-92, 937 P.2d 575 (1997), the defendant was charged with committing his crimes during a five-year period, and during that five-year period the standard range for the defendant's crimes was increased significantly. The trial court imposed a sentence using the longer standard range; the defendant appealed, arguing that the court should have used the standard ranges that were used when the charging period started. *Id.* at 185-86. The court concluded that using the increased penalties without requiring the State to prove the acts occurred after the effective dates of the increased penalties was unconstitutional, even though there was evidence that showed the defendant committed the criminal acts prior to the penalty increase. *Id.* at 191. The supreme court reversed and remanded for resentencing at which the trial court was to use the standard range that was effective at the start of the charging period. *Id.* at 184, 190-93.

---

likelihood that the prosecutor's improper statements impacted the verdict; therefore, Brown's ineffective assistance of counsel claim fails as well. *Gouley*, 19 Wn. App. 2d at 201 (noting if a defendant fails to demonstrate a substantial likelihood that the misconduct affected the jury's verdict, the defendant likewise fails to show a reasonable probability the outcome of the trial would have differed had counsel objected to the misconduct).

Here, the charging period spanned an eight year period in which commercial sex abuse was reclassified from a class C felony to a class B felony. LAWS OF 2010, ch. 289, § 13. As in *Parker*, the State failed to prove that the conduct on which it relied for the convictions occurred entirely after the amendment. 132 Wn.2d at 191. Accordingly, we reverse the two counts for commercial sex abuse and remand these convictions for resentencing as class C felonies.

## V. OFFENDER SCORE

Brown argues that he is entitled to resentencing in light of *State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521 (2021), which declared the statute criminalizing the possession of a controlled substance to be unconstitutional. The State acknowledges that Brown's unlawful possession convictions should be vacated and his offender score be amended. We agree.

In *Blake* the supreme court held former RCW 69.50.4013(1) (2017), Washington's strict liability drug possession statute, is void because it violates state and federal due process clauses. 197 Wn.2d at 195. When a conviction is based on an unconstitutional statute, that conviction cannot be considered in calculating the offender score. *See State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). Accordingly, we remand for the trial court to correct Brown's judgment and sentence, and resentence him in accordance with *Blake*.

## VI. COMMUNITY CUSTODY CONDITIONS

Brown argues that the trial court erred in imposing community custody conditions that prohibit him from having contact with any minors because it failed to take into account that Brown had a minor son. Brown asks us to remand for the trial court to appropriately tailor the conditions.

We hold that the trial court failed to conduct the necessary inquiry on the record before imposing the condition.

23

A. LEGAL PRINCIPLES

Parents have a fundamental constitutional right to parent their children. *State v. DeLeon*, 11 Wn. App. 2d 837, 840-42, 456 P.3d 405 (2020). However, when reasonably necessary to prevent a child from being harmed, a court may impose conditions that impact a defendant's fundamental right to parent. *State v. Howard*, 182 Wn. App. 91, 101, 328 P.3d 969 (2014). " 'Prevention of harm to children is a compelling state interest, and the State does have an obligation to intervene and protect a child when a parent's actions or decisions seriously conflict with the physical or mental health of the child.' " *DeLeon*, 11 Wn. App. 2d at 841 (internal quotation marks omitted) (quoting *Howard*, 182 Wn. App. at 101). These conditions "must be narrowly drawn," and "[t]here must be no reasonable alternative way to achieve the State's interest." *State v. Warren*, 165 Wn.2d 17, 34-35, 195 P.3d 940 (2008). To impose this prohibition, the trial courts must conduct an inquiry on the record. *DeLeon*, 11 Wn. App. 2d at 841; *See In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 382, 229 P.3d 686 (2010).

B. ANALYSIS

Here, there is no record that the trial court conducted the necessary inquiry to prohibit Brown from having contact with his minor child. At sentencing, the court did not address Brown's fundamental constitutional right to parent. Nor did the court explain whether prohibiting Brown from having any contact with his child was reasonably necessary to prevent harm to the child. Furthermore, there is no indication that the trial court considered whether less restrictive alternatives were possible or narrowly drew the prohibition. *Warren*, 165 Wn.2d at 34-35; *Howard*, 182 Wn. App. at 101.

Accordingly, because the trial court did not conduct the necessary inquiry, we reverse the conditions that prohibit all contact with minors and remand for the trial court to conduct the required analysis on the record before imposing the conditions again. This is not to say that the court is required to impose a less restrictive prohibition, the court simply must demonstrate that it considered the factors mentioned above, prior to imposing the conditions.[7]

## VII. COMMUNITY CUSTODY SUPERVISION FEE

Brown argues because he is indigent, the trial court erred in imposing discretionary supervision fees. We disagree.

Supervision fees, although discretionary, are not costs. *State v. Starr*, 16 Wn. App. 2d 106, 108-10, 479 P.3d 1209 (2021). Despite being a discretionary legal financial obligation (LFO), we recognize there are strong policy arguments in favor of the trial court considering a defendant's ability to pay discretionary LFOs before imposing them. *State v. Clark*, 191 Wn. App. 369, 376, 362 P.3d 309 (2015). Because this case is being remanded for resentencing, the trial court may, on remand, reconsider its imposition of the community custody supervision fee.[8]

## SAG

Brown raises a number of claims in his SAG. But because Brown fails to provide us with any details regarding the nature and occurrence of these alleged errors, as required by RAP

---

[7] Brown also argues his counsel was ineffective for failing to object to the no-contact prohibitions. Because we instruct the trial court to conduct the necessary inquiry on remand, we need not address this claim.

[8] Brown also notes that the DNA costs have been stricken after House Bill 1783 went into effect and argues the supervision fee should be treated the same as the DNA costs. House Bill 1783 specifically amended the DNA requirement but made no mention of supervision fees; therefore, we do not find this argument to be persuasive. Laws of 2018, ch. 269, § 18.

10.10(c), we decline to consider them. *State v. Griepsma*, 17 Wn. App. 2d 606, 623, 490 P.3d 239, *review denied*, 198 Wn.2d 116 (2021). Furthermore, we are "not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review." RAP 10.10(c).

CONCLUSION

We hold that Brown's conviction under count 14 is not supported by sufficient evidence, and that his conviction under count 3 violates his right to be free from double jeopardy. Count 3 must be vacated and count 14 must be reversed and dismissed with prejudice. On remand, Brown must be resentenced. Brown's remaining challenges to his convictions fail.

Regarding Brown's sentence, we reverse Brown's commercial sex abuse sentences because they were erroneously classified as class B felonies, order that Brown's convictions for unlawful possession of a controlled substance be stricken from his criminal history and offender score, and remand for resentencing. On remand, the trial court must conduct an inquiry on the record to determine whether Brown should be prohibited from having contact with his minor son, reconsider whether the custody supervision fee is appropriate in this case, and resentence Brown with the commercial sex abuse convictions as class C felonies.

Finally, we decline to consider any of the issues Brown raises in his SAG.

Accordingly, we affirm in part, reverse in part, and remand to the trial court to vacate count 3 and dismiss count 14 with prejudice, and for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 54285-4-II

CRUSER, A.C.J.

We concur:

MAXA, J.

LEE, J.

27